# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

**MOYNA CUNNINGHAM,**

    *Plaintiff*,

    v.

**EQUIFAX INFORMATION
SERVICES, LLC,**

    *Defendant*.

Case Number: 8:24-cv-2218

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, Moyna Cunningham ("Ms. Cunningham"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendant, Equifax Information Services, LLC ("Equifax") stating as follows:

## PRELIMINARY STATEMENT

1.      This is an action brought by Ms. Cunningham against the Defendant for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.* ("FCRA").

## JURISDICTION AND VENUE

2.      Subject matter jurisdiction arises under the FCRA, 15 U.S.C. § 1681p, and 28 U.S.C. § 1331.

3.      The Defendant is subject to the provisions of the FCRA and is subject to the jurisdiction of this Court pursuant to § 48.193, Fla. Stat. and Fed. R. Civ. P. 4(k).

4.      Venue is proper in the Middle District of Florida pursuant to 28 U.S.C. §1391(b)(2) because the acts complained of were committed and / or caused by the Defendant within Hillsborough County, which is in the Middle District of Florida.

## PARTIES

5.      Ms. Cunningham is a natural person and at all times relevant, resided in Hillsborough County, Florida and is a *Consumer* as defined by the FCRA, 15 U.S.C. § 1681a(c).

6.      Equifax is a Georgia limited liability company with a principal business address of 1550 Peachtree Street NW, Atlanta, GA 30309.

7.      Equifax is registered to conduct business in the State of Florida where its registered agent is Corporation Service Company, 1201 Hays Street, Tallahassee, FL 32301.

8.      Equifax is a nationwide Consumer Reporting Agency ("CRA") within the meaning of the FCRA, 15 U.S.C. § 1681a(f), in that it, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and uses various means of interstate commerce for the purpose of preparing or furnishing consumer reports, specifically including mail and telephone communications.

## FACTUAL ALLEGATIONS

### Duplicate Tradelines

9.     On or around August 16, 2024 Ms. Cunningham requested and received her consumer disclosure from Equifax.

10.     Equifax, in its disclosure to Ms. Cunningham, indicated that Ms. Cunningham had three different credit card accounts with Credit One Bank ("Credit One").

11.     Equifax's disclosure indicated she had two Credit One Visa® credit cards opened on the exact same day -- November 18, 2020.

12.     These two accounts were clear, and obvious, duplicates.

13.     Ms. Cunningham did not open two separate Visa® credit card accounts with Credit One on the same day, nor would Credit one approve a consumer for two new accounts on the same day.

14.     Both account tradelines showed the same $300 credit limit and $477 high balance, through May 2024.

15.     The first tradeline (the "First Credit One Tradeline") indicated it had last been updated on August 2, 2024, or two weeks before the disclosure was produced.

16.     The First Credit One Tradeline reported with a balance of $0.

17.     The First Credit One Tradeline contains accurate information, to the best of Plaintiff's knowledge at this time, regarding the Credit One Visa® credit card Ms. Cunningham opened in November 2020.

18.     The second tradeline indicated a balance owed of $244, and had been last updated April 8, 2024 – more than four months prior to Equifax producing the consumer disclosure for Plaintiff (the "Second Credit One Tradeline").

19.     Both tradelines show identical payment history in terms of payment dates, payment amounts, and identical dates of late payments in 2021, 2022 and 2023.

20.     Both the First Credit One Tradeline and the Second Credit One Tradeline (jointly, the "Tradelines") clearly concern an identical, singular, credit card belonging to Ms. Cunningham.

21.     On its face, it would be exceedingly unlikely a bank would issue two Visa® credit cards to the same consumer on the same day with the same credit limit.

22.     Even had a bank issued two cards to a consumer on the same day, it would be near impossible for two separate credit cards to have the same high balance, same payment history and payment dates, and the same months reported as having late payments, after four years.

23.     Despite the obvious duplication of the Credit One tradelines, Equifax included both iterations of the Tradelines in reports sold regarding Ms. Cunningham after April 2024, including a pre-screen report sold to Fifth Third Bank.

24.     Due to numerous systemic issues with Equifax's software, this duplicate-reporting issue remain undetected for several months.

25.     Equifax is well aware of the flaws in its software which frequently fail to catch and remove duplicate tradelines from appearing on consumer's credit reports.

26.     Credit One also furnishes data to Equifax's two main competitor CRAs -- Experian Information Solutions, Inc. ("Experian") and Trans Union, LLC ("Trans Union").

27.     Equifax, Experian and Trans Union require their data furnishers to adhere to Metro 2 standards for credit reporting and report data only in Metro 2 coding.

28.     Metro 2 is a uniform set of reporting standards and a *lingua franca* utilized by large nationwide CRAs like Equifax, Equifax, Trans Union, and Innovis for consumer reporting.

29.     Credit One, like most large furnishers of data to nationwide CRAs, prepares a ***single*** batch of account data and then provides the identical Metro 2 data to Equifax, Experian, and Trans Union.

30.     Despite Credit One provisioning all three CRAs with identical data, only Equifax duplicated the Credit One tradeline into two accounts.

31.     Credit One increased the credit limit on Ms. Cunningham's Visa® credit card from $300 to $450 in May 2024.

32.     On information and belief, Equifax's automated systems somehow conflated the change in the credit limit from $300 to $450 as a new account, and duplicated the tradelines, even through Credit One did not report any new account had been established or that it was now reporting two accounts having been opened simultaneously on November 18, 2020.

33.     This flaw in Equifax's systems was compounded by the fact the Second Credit One Tradeline had been "last reported" in April 2024, which should have been another "red flag" to Equifax that an account had been duplicated.

34.     Beyond this, including information on what purports to be an open credit card balance (with monthly repayment terms) but last updated four months ago is inherently unreasonable and virtually guarantees the report will contain out-of-date information.

35.     Indeed, the information was out-of-date, as Ms. Cunningham had paid the balance from $244 to $0 in the intervening time.

36.     Metro 2 standards require data furnishers to make monthly updates to balances, payment histories, etc. for any account that does not have a $0 balance.

37.     Despite the fact the Second Credit One Tradeline was four months out-of-date, and woefully non-compliant with Metro 2 standards (which Equifax itself helps promulgate), Equifax continued to include the data in reports it compiled and sold concerning Ms. Cunningham.

38.     Equifax has been sued for this exact same issue in the past, and thus have knowledge of the issues.

39.     Due to numerous and obvious red flags, Equifax knew, or should have known, that Credit One account was reporting twice.

40.     Equifax has no reasonable procedures in place to prevent obvious duplicate accounts from appearing multiple times in a consumer's credit history.

41.     Equifax's inclusion of the duplicate tradeline caused significant harm to Ms. Cunningham's credit scores and debt-to-income ratio, as the number of delinquent accounts on a consumer's report adversely affects the consumer's scores.

42.     Further, a $244 balance on a $300 credit limit is an 81.3% credit utilization ratio.

43.     Generally, credit utilization ratios over 10% can negatively impact a consumer's credit score; rates over 30% generally have a more-severe impact.

44.     FICO scores are the predominant scores used by lenders. FICO has released guidance about what can affect consumers' credit scores.

45.     FICO takes the following into account when determining a consumers' score:

        a.     35% Payment History

        b.     30% Credit utilization

        c.     15% Credit history length

        d.     10% Pursuit of new credit

        e.     10% Credit mix.

        *See* https://www.myfico.com/credit-education/whats-in-your-credit-score.

46.     Thus, the duplication of the Credit One tradeline is causing FICO's algorithms to score Ms. Cunningham significantly worse, because the duplicated tradeline contains late payment history (35% of score) and high credit utilization (30% of score).

47.     Equifax continues to include both iterations of the Credit One tradeline in reports sold regarding Ms. Cunningham, despite the obvious similarities in the tradelines indicating 99.999% probability they are duplicates.

48.     Equifax has sold several reports to Ms. Cunningham's creditors and potential creditors in the last 24 months, which were in conjunction with an application for credit submitted by Ms. Cunningham.

49.     On information and belief, each report sold by Equifax included both Credit One tradelines.

50.     Equifax thus failed to use reasonable procedures designed to result in maximum possible accuracy when preparing the credit reports sold to each lender.

51.     The duplicate tradelines included in Equifax's reports caused unjust harm to Ms. Cunningham's credit scores and negatively affected her ability to obtain credit.

**Equifax Fails to Provide Accurate Consumer Disclosure**

52.     As aforementioned, on August 16, 2024, Plaintiff requested her consumer disclosure from Equifax.

53.     Equifax produced and mailed a copy of the disclosure to Ms. Cunningham at her home in Florida.

54.     Upon receipt of Ms. Cunningham's request, Equifax was required to "clearly and accurately" disclose all information in Ms. Cunningham's file at the time of her request, including identification of *each* person, including an end user if the

report was obtained by a reseller, who obtains a consumer report from E within the prior year *for any purpose*. See 15 U.S.C. § 1681g(a)(3)(A)(ii).

55.     Frequently, Equifax fails to even come close to fulfilling its legal obligations to disclose this data.

56.     For example, Equifax's disclosure shows an inquiry made on April 9, 2024 as such:

| MEDLYTIX, LLC | 04/09/2024 |
|---|---|
| 675 Mansell Rd Ste 100 Roswell GA 300764870  Phone: 6785072300 | |

57.     Medlytix, LLC ("Medlytix") obtained Ms. Cunningham's report on April 9, 2024 for the purposes of "account review."

58.     Medlytix is not an end-user of reports obtained from Equifax.

59.     Medlytix is instead a "reseller of credit reports."

60.     Medlytix, as required by the FCRA, discloses to Equifax who the end user of the report is (typically, a hospital or doctor's office).

61.     Despite knowledge Medlytix a reseller of credit reports and not an end-user, and despite Medlytix disclosing to Equifax who(m) the end-user was, Equifax disclosed the Medlytix inquiry *without* indication of the true end user of the report.

62.     Equifax therefore failed to disclose to Ms. Cunningham the identity of each person that obtained her consumer report within the prior year, as it did not disclose the end user of the report sold to Medlytix.

63.     On information and belief, Medlytix requests thousands of reports from Equifax each month concerning consumers, in each instance acting as a reseller of information to its clients.

64.     Equifax has been sued numerous times in the past for failing to disclose the names of persons obtaining credit reports as required by law.

65.     As a result of Equifax's failure to disclose the end user, Ms. Cunningham was denied information to which she has a legal right.

66.     The lack of accurate, full disclosure of who had obtained her credit report also caused Ms. Cunningham great frustration and emotional distress and made her concerned she was the victim of fraud or identity theft.

67.     Equifax thus also failed to use reasonable procedures when preparing a consumer disclosure to provide to Ms. Cunningham upon her request.

68.     Ms. Cunningham has hired the undersigned law firm to represent her in this matter and has assigned the firm her right to fees and costs.

## COUNT I
## EQUIFAX'S WILLFUL VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)

69.     Ms. Cunningham adopts and incorporates paragraphs 1 - 68 as if fully stated herein.

70.     Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Cunningham when Equifax sold several reports which contained a duplicate

tradeline regarding a Visa credit card issued by Credit One, one of which incorrectly reported a high balance which negatively affected her utilization rate.

71.     Equifax has been sued before for identical conduct and is thus aware that its procedures for ensuring accuracy of reports are flawed.

72.     Equifax's conduct was thus willful and intentional, or, alternately, was done with reckless disregard for its duties under the FCRA to provide reports with maximum possible accuracy.

73.     Accordingly, Equifax is liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Cunningham's actual damages or statutory damages of $1000 per violation, plus punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cunningham respectfully requests this Honorable Court enter judgment against Equifax for:

a.     The greater of Ms. Cunningham's actual damages and statutory damages of $1,000 per violation pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b.     Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT II
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681e(b)

### (Plead in the Alternative to Count I)

74.     Ms. Cunningham adopts and incorporates paragraphs 1 - 68 as if fully stated herein and plead in the alternative to Count I.

75.     Equifax violated **15 U.S.C. § 1681e(b)** when it failed to follow reasonable procedures to assure maximum possible accuracy of consumer reports sold regarding Ms. Cunningham when Equifax sold several reports which contained a duplicate tradeline regarding a Visa credit card issued by Credit One, one of which incorrectly reported a high balance which negatively affected her utilization rate.

76.     Equifax acted negligently, and is liable, pursuant to 15 U.S.C. § 1681o, for Ms. Cunningham's actual damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cunningham respectfully requests this Honorable Court enter judgment against Equifax for:

a.     Ms. Cunningham's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.     Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681o(a)(2); and,

c.     Such other relief that this Court deems just and proper.

## COUNT III
## EQUIFAX'S WILLFUL VIOLATIONS OF THE
## FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

77.    Ms. Cunningham adopts and incorporates paragraphs 1 – 68 as if fully stated herein.

78.    Equifax violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, that procured Ms. Cunningham's consumer report during the one-year period preceding the date on which the request was made. Specifically, Equifax failed to identify the end-user of the consumer report which it sold to Medlytix on April 9, 2024, in its August 16, 2024 disclosure to Ms. Cunningham.

79.    Equifax, who has a duty to investigate each entity to whom it sells a report, knows, or should know, that Medlytix is a reseller of information, but despite such knowledge, Equifax either: (a) does not require Medlytix to provide the identity of its clients; or (b) has such information but refuses to disclose it to the consumer upon request, despite its obligations under 15 U.S.C. § 1681g.

80.    Equifax's conduct was thus willful and intentional, or alternately, was done with a reckless disregard for its duties under the FCRA.

81.    Equifax is therefore liable, pursuant to 15 U.S.C. § 1681n, for the greater of Ms. Cunningham's actual damages and statutory damages not to exceed $1,000 *for each violation*, punitive damages, reasonable attorneys' fees, and costs.

**WHEREFORE,** Ms. Cunningham respectfully requests this Honorable Court to enter judgment against Equifax for:

a. The greater of statutory damages of $1,000.00 per incident and Ms. Cunningham's actual damages, pursuant to 15 U.S.C. § 1681n(a)(1)(A);

b. Punitive damages pursuant to 15 U.S.C. § 1681n(a)(2);

c. Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3); and,

d. Such other relief that this Court deems just and proper.

## COUNT IV
## EQUIFAX'S NEGLIGENT VIOLATIONS OF THE FCRA, 15 U.S.C. § 1681g(a)(3)(A)(ii)

### (Pled in the Alternative to Count III)

82. Ms. Cunningham adopts and incorporates paragraphs 1 – 68 as if fully stated herein and pled in the alternative to Count III.

83. Equifax violated **15 U.S.C. § 1681g(a)(3)(A)(ii)** when it failed to identify each person, including the end-user, that procured Ms. Cunningham's consumer report during the one-year period preceding the date on which the request was made. Specifically, Equifax failed to identify the end-user of the consumer report which it sold to Medlytix on April 9, 2024, in its August 16, 2024 disclosure to Ms. Cunningham.

84. Equifax, who has a duty to investigate each entity to whom it sells a report, knows, or should know, that Medlytix is a reseller of information, but despite such knowledge, Equifax either: (a) does not require Medlytix to provide the identity

of its clients; or (b) has such information but refuses to disclose it to the consumer upon request, despite its obligations under 15 U.S.C. § 1681g.

85.    Equifax's conduct was negligent, and Equifax is therefore liable, pursuant to 15 U.S.C. § 1681o, for Ms. Cunningham's actual damages.

**WHEREFORE,** Ms. Cunningham respectfully requests this Honorable Court to enter judgment against Equifax for:

a.    Ms. Cunningham's actual damages pursuant to 15 U.S.C. § 1681o(a)(1);

b.    Reasonable costs and attorneys' fees pursuant to pursuant to 15 U.S.C. § 1681n(a)(3) and/or 15 U.S.C. § 1681o(a)(2); and,

c.    Such other relief that this Court deems just and proper.


## JURY TRIAL DEMANDED

Ms. Cunningham hereby demands a trial by jury on all issues so triable.


Respectfully submitted on September 20, 2024, by:

**SERAPH LEGAL, P. A.**

*/s/ Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar No.: 119168
2124 W. Kennedy Blvd., Suite A
Tampa, Florida 33606
Tel: 813-697-1230 (Ext: 302)
Fax: 855-500-0705
BGeiger@SeraphLegal.com
*Counsel for Plaintiff*